UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:13-cv-93-RJC

| DAVID TED BIRDO, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| LARRY DUNSTON, FRANCES REEL, JAMES GRIBBLE, | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court for initial review pursuant to 28 U.S.C. § 1915(e) and § 1915A. For the reasons explained below, the Court dismisses Plaintiff's Complaint sua sponte for failure to state a claim.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff David Ted Birdo is a state court inmate currently incarcerated at Eastern Correctional Institution in Maury, North Carolina. On March 6, 2013, Plaintiff filed this action under 42 U.S.C. § 1983.[1] Plaintiff paid the filing fee and is proceeding pro se. Plaintiff alleges violations of his rights under the First, Eighth, and Fourteenth Amendments stemming from the confiscation of certain mail materials, an increase in his security level classification, and prison officials' decision to require Plaintiff to participate in a rehabilitative program for prison gang members. Plaintiff describes the confiscated mailings as the "pro white" writings of David Lane. Plaintiff has named as Defendants Larry Dunston, identified as Chief of Security, North Carolina

---

[1] Plaintiff originally filed the Complaint in the Eastern District of North Carolina, and that Court transferred the action to this Court by Order dated April 1, 2013.

1

Department of Correction; and Frances Reed and James Gribble, both identified as Lieutenant Facility Intelligence Officers at Avery-Mitchell Correctional Institution.

Plaintiff alleges that on July 26, 2011, while he was incarcerated at Avery-Mitchell Correctional Institution, he received several David Lane writings through the mail, but that prison officials confiscated and refused to allow Plaintiff to read some of them. See (Doc. No. 1 at 3; 4). Plaintiff alleges that on August 3, 2011, he met with Defendant Reed regarding David Lane writings that had been sent to Plaintiff on July 13, 2011, and August 2, 2011. (Id. at 4). Plaintiff then met with Defendant Reed again on August 5, 2011, regarding David Lane writings sent to Plaintiff on August 1, 2011. Plaintiff alleges that he informed Defendant Reed that the writings were not gang-related, nor did they advocate violence, despite that the writings were "pro-white." (Id.). Plaintiff alleges that the David Lane writings received through the mail on July 26, 2011 are still in Plaintiff's possession. (Id.).

Plaintiff alleges that on August 5, 2011, he submitted his first grievance alleging a violation of his First Amendment rights. (Id.). On August 8, 2011, a person named Lisa Wheeler allegedly left a voicemail for Defendant Dunston regarding the David Lane writings. (Id.). On August 9, 2011, Plaintiff alleges that Defendant Dunston responded that because Plaintiff held pro-white beliefs, he could not receive the materials. Dunston also allegedly stated that if Wheeler sent Plaintiff any more writings, Dunston would increase Plaintiff's security levels. (Id. at 5).

On or around September 27, 2011, as a result of receiving the David Lane writings, Plaintiff pled guilty to an involvement with a gang charge, and Plaintiff was validated as a Level One Aryan Nation member on or around that date.[2] See (Doc. No. 1-1 at 14). At some point,

---

[2] The Court takes judicial notice that the Aryan Nation has been recognized as a violent and

Plaintiff was classified as part of a Security Threat Group.

Plaintiff alleges that on October 12, 2011, he was transferred to Alexander Correctional Institution and on November 17, 2012, he was transferred to Eastern Correctional Institution based on Plaintiff's receipt of the writings. (Doc. No. 1 at 6; 7). Plaintiff alleges that prison officials at both the Avery-Mitchell and Alexander Correctional Institutions disciplined him for receiving the David Lane materials by imposing an elevated custody status, time in segregation, loss of good conduct time, extra work duty, and loss of telephone and visitation privileges. (Id. at 4; 6). Plaintiff alleges that, while at Alexander Correctional Institution, Defendant Gribble notified Plaintiff that Defendant Dunston had increased Plaintiff's security level classification, and Gribble recommended that Plaintiff remain at that level. (Id. at 6-7).

Plaintiff alleges that on January 14, 2013, while at Eastern Correctional Institution, Captain Lewis informed Plaintiff that because of the Lane writings, Plaintiff would have to participate in the Security Threat Group Management Unit ("STGMU") Program at Foothills Correctional Institution, a nine-month program for active gang members that requires inmates to remain in their cells 22 to 23 hours each day. (Id. at 8). According to Plaintiff, on some occasions he has been allowed to receive mail that included writings by Lane, but on at least three occasions his mail was confiscated and he was punished for requesting that his family provide him with Lane's writings. (Id. at 5). Plaintiff alleges that since being imprisoned he has

---

powerful prison gang. See Kevin Johnson, *Co-founder Sheds Light on Texas' Aryan Brotherhood*, USA TODAY, Apr. 12, 2013, http://www.usatoday.com/story/news/nation/2013/04/11/co-founder-sheds-light-on-aryan-brotherhood/2074789; David Grann, *Annals of Crime: The Brand*, THE NEW YORKER, Feb. 16, 2004 ("Authorities had once dismissed the Aryan Brotherhood as a fringe white-supremacist gang; now, however, they concluded that what prisoners had claimed for decades was true—namely, that the gang's hundred or so members, all convicted felons, had gradually taken control of large parts of the nation's maximum-security prisons, ruling over thousands of inmates and transforming themselves into a powerful criminal organization.").

never been found guilty of being involved in gang activity, nor has he had any infractions for violence. (Id. at 8). Plaintiff alleges that Defendants violated his right to free speech under the First Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, and his due process rights under the Fourteenth Amendment. (Id. at 3).

As relief, Plaintiff seeks appointment of counsel, a temporary restraining order prohibiting Defendants from sending Plaintiff to Foothills Correctional Institution to attend the STGMU program, a jury trial, compensatory damages of $150,000 per Defendant, punitive damages of $75,000 per Defendant, restoration of gain time and privileges lost, restoration of Plaintiff's security level back to Level One, removal of the charge of being affiliated with a gang; a declaratory judgment that Defendants violated Plaintiff's First, Eighth, and Fourteenth Amendment rights, and costs and attorneys' fees. (Id. at 4; 11).

B. Plaintiff's Administrative Grievances

Plaintiff has attached as exhibits to his Complaint four grievances he filed detailing his claims in this action.[3]

    1. Plaintiff's August 5, 2011 Grievance Related to the Confiscation of the David Lane Materials

In his first grievance, Plaintiff complained about the confiscation of the David Lane materials. In Step One of the grievance process, in response to Plaintiff's grievance, prison officials at Avery Mitchell Correctional Institution stated on August 11, 2011:

> David Birdo . . . is a validated Level I member of the STG [Security Threat Group] Aryan Nation. His mail is monitored and screened as any other mail that comes into the facility. On three separate occasions I have received letters from

---

[3] The Court may take judicial notice of Plaintiff's grievance filings in the prison administrative proceedings without converting this matter to a Rule 56 motion for summary judgment. See Franklin v. Ward, No. 9:12-477-JFA-BM, 2012 WL 5499836, at *2 n.4 (D.S.C. Sept. 11, 2012).

the Mail Room to review, due to the information those letters contained, as well as pictures and symbols. There are several articles referencing David Lane, a known member and activist within the Aryan Nation, the Ku Klux Klan, and other White Supremacist material. There was also a picture of Osama Bin Laden and Adolf Hitler: the Adolf Hitler picture has a large swastika emblem in the middle of it. Both individuals are known threat terrorists with world domination beliefs. The swastika is a known logo or symbol used frequently to identify with the Aryan Nation and other known White Supremist [sic] groups. I have forwarded the material to Larry Dunston, Chief of Security over STG affairs, for review and disposition of the material. [] Birdo received notification of the material that is being held and has been advised that it has been sent for further review.

(Doc. No. 1-1 at 2).

Next, in Step Two of the grievance process, prison officials stated on August 26, 2011:

After a careful review of your grievance, I find that staff has adequately responded to your complaint. Per NCDOC policy Chapter D, section 0.109 Publications Received/Possessed by Inmates: Materials which pose a threat to the specified objectives may do so either directly, or indirectly. Direct threats include but are not limited to the active advocacy of escape, interference with security devices, or violence against staff or others. Indirect threats to these objectives include but are not limited to: (1) materials which advocate or facilitate collective action or affiliation by inmates either generally or with respect to validated Security Threat Groups; (2) materials, with the exception of foreign language publications as noted in .0109(e), containing or facilitating communications which are not readily understandable to reviewing staff; (3) materials which may be used to harass, distract, demean, or intimidate staff or others; (4) or materials which impede inmate rehabilitation. The confiscated material was sent to the Chief of Security for further review, if he deems it appropriate then it will be returned to you. Based on this information, no further action is required.

(Id. at 2).

Finally, in a Findings and Disposition Order dated September 21, 2011, a Grievance

Examiner found as follows:

Inmate David Birdo filed this grievance on August 5, 2011, at Avery Mitchell Correctional Institution complaining about wanting to know the status of the material-information that was taken from him. Staff responded that an investigation of inmate Birdo's concern revealed that staff adequately and in detail addressed inmate Birdo's material-information concern in the step one unit response of his grievance.

The examiner has carefully reviewed the grievance and the response given by

5

staff in the DC-410A response. From this review, I am convinced that staff has adequately addressed this inmate's grievance concerns. I adopt the facts found by the staff administrator.

My examination of this grievance reveals no violation of applicable Division of Prisons policy nor does it show any evidence of staff indifference. No further action warranted; thus this grievance is dismissed.

(Id. at 3).

> 2. Plaintiff's March 28, 2012 Grievance Related to His Security Classification and Designation for Transfer to STGMU at Foothills Correctional Institution

In his second grievance, Plaintiff complained about being demoted to Security Level Three by the Chief of Security's Office and the prison's planned transfer of him to the Foothills Correctional Institution to participate in the STGMU program. In Step One of the grievance process, prison officials responded as follows on March 7, 2012:

> According to my investigation the Facility Intelligence Lieutenant reports you were demoted to level 3 by the Chief of Security's Office. You have had 1 Class A Infraction and 3 Class B Infractions within the last year all of which place in violation of the core criteria established in Section .1700 of the Security Manual. Your request to be taken back to level one cannot be handled at this level. Before you can be promoted to Level One you will have to have attended the STG Management Program at Foothills. Your name will be placed on a long list of other level threes and when yours comes up you will be sent to the program. No further action necessary.

(Id. at 8). Next, in Step Two of the grievance process, a prison official stated on March 7, 2012, "I have reviewed your grievance . . . and found that it has been appropriately responded to in Section 23. No further response is warranted." (Id.).

In a Findings and Disposition Order dated March 28, 2012, a Grievance Examiner found as follows:

> David Birdo filed this grievance on January 29, 2012, at Alexander Correctional Institution. Staff concluded that the inmate has not been treated unfair[ly] or

6

outside the scope of correctional policies and procedures.

This examiner has carefully reviewed the grievance and the response given by staff in the DC-410A response. From this review, I am convinced that staff has adequately addressed this inmate's grievance concerns. I adopt the facts found by the staff investigator.

On this record, this inmate's allegations are insufficiently supported. Thus, this grievance is dismissed for lack of supporting evidence.

(Id. at 9).

3. Plaintiff's October 17, 2012, Grievance Related to His Classification as a Level Three Aryan Nations Member

In his third grievance, Plaintiff complained about his classification as a Level Three Aryan Nations member. In Step One of the grievance process, prison officials responded as follows on October 15, 2012:

According to SGTO Swain, you were validated as a Level-1 Aryan Nation on 9/14/11. You pleaded guilty to an A-14 (involvement with gang charge). STGO Swain stated that by NCDPS Security Threat Group policy, the A-14 charge meets the core criteria for a level increase. STGO Swain stated that this is why you are now a Level-3 Aryan Nation. Therefore, no further action is necessary.

(Id. at 14).

Next, in Step Two of the grievance process, a prison official stated on October 22, 2012, "As noted in step 1 response, policy was followed regarding your A14 gang infraction initiating a referral for increase in STG levels which was forwarded through the chain of command for approval." (Id. at 15).

In a Findings and Disposition Order dated November 27, 2012, a Grievance Examiner found as follows:

David Birdo filed this grievance on 10/17/12 at Pasquotank [Correctional Institution] grieving about his STG Level Status being increased. Inmate is now housed at Eastern [Correctional Institution]. [A]dministrator Harrell responded "As noted in step 1 response, policy was followed regarding your A14 gang

7

infraction initiating a referral for increase in STG Levels which was forwarded through the chain of command for approval."

This examiner has reviewed this grievance and the response by staff. On this record, it appears that proper action has been taken by staff to resolve this inmate's grievance concerns. Therefore, this grievance is considered resolved by DOC staff.

(Id.).

> 4. Plaintiff's January 17, 2013, Grievance Related to The Requirement that
>
> He Participate in the STGMU Program at Foothills Correctional
>
> Institution

In his fourth grievance, Plaintiff complained about his impending transfer to Foothills Correctional Institution to participate in the STGMU program. Prison officials responded as follows on January 24, 2013:

> You stated Captain Lewis and Sgt. Eubanks informed you about going to the Foot Hills to be added to participate in the [STGMU] Program. You stated you did not want to be added to any list no[r] participate in any program. Captain Lewis stated it was not up to him whether or not you go but it is the decision of Mr. Larry Dunston, Security Specialist.

(Id.). Next, in Step Two of the grievance process, a prison official stated on February 12, 2013, "Step one response is appropriate. There are specific policies in the Security Manual pertaining to assignments to the STGMU program. All information received indicates all guidelines/policies were followed in this incident. No further information is needed." (Id. at 18). No Final Disposition and Order was attached as an exhibit.

Finally, Plaintiff has also attached as an exhibit a list of his infractions, taken from the Department of Public Safety web site, and showing the following infractions by Plaintiff since his incarceration in North Carolina correctional institutions: Involvement With A Gang or Security Threat Group on September 14, 2011; Disobey Order on August 26, 2011; Verbal

Threat on August 26, 2011; Weapon Possession on April 13, 2011; Attempt Class B Offense on January 10, 2011; Attempt Class D Offense on January 10, 2011; Profane Language on June 7, 2009; Disobey Order on June 12, 2007; Disobey Order on May 13, 2007; Disobey Order on December 28, 2005; Unauthorized Location on December 28, 2005; and Profane Language on May 7, 2005.[4]  See (Id. at 22).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).  Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.  In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios.  Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

## III. DISCUSSION

### A. First Amendment Claim

While prisoners and detainees have some First Amendment rights in both receiving and sending mail, prison officials may place reasonable restrictions on these rights.  See Thornburgh

---

[4] The Court takes judicial notice that Plaintiff's infractions are public records and their authenticity is not in dispute.  See Jones v. Penn Nat'l Ins. Co., 835 F. Supp. 2d 89 (W.D.N.C. 2011).

v. Abbott, 490 U.S. 401, 413 (1989). Prison regulations and practices relating to the regulation of incoming mail are analyzed under a reasonableness standard as set forth in Turner v. Safley, 482 U.S. 78, 89-91 (1987). Under that standard, a prison action is valid if it is reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. In determining the reasonableness of a restraint on an inmate's right to receive mail, courts must consider the following factors: (1) whether there is a valid, rational connection between the action and the stated legitimate government interest; (2) whether there are alternative means of exercising the right; (3) whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally; and (4) the absence of ready alternatives. Id. at 89-90.

Based on the Complaint and on the attached grievances, Plaintiff has not stated a claim of a First Amendment violation against Defendants. The Court finds that the first factor in Turner is satisfied because there is a rational connection between the North Carolina Department of Public Safety's regulations and the objective of prohibiting mail associated with Security Threat Groups and white supremacist groups in particular, from entering or leaving the state's prisons. Next, as to whether there are alternative means of exercising Plaintiff's First Amendment right, Plaintiff is still free to engage in free expression regarding political matters, political beliefs, or political parties as long as his speech does not contain threatening or inflammatory communications.

Next, as to whether accommodation of the right will have an adverse impact on guards, other inmates, and prison resources generally, "it is common sense that enabling inmates to receive gang-related material has an enormous impact on guards and other inmates" and "material associated with Security Threat Groups poses the threat of inciting gang violence in the prison environment." Johnson v. Williams, No. 3:07-cv-1659, 2011 WL 6778711, at *4 (D. Or.

Dec. 22, 2011). Here, in response to Plaintiff's grievance regarding the David Lane materials, prison officials noted that the confiscated materials contained "articles referencing David Lane, a known member and activist within the Aryan Nation, the Ku Klux Klan, and other White Supremacist material. There was also a picture of Osama Bin Laden and Adolf Hitler: the Adolf Hitler picture has a large swastika emblem in the middle of it. Both individuals are known threat terrorists with world domination beliefs. The swastika is a known logo or symbol used frequently to identify with the Aryan Nation and other known White Supremist [sic] groups." (Doc. No. 1-1 at 2). Prison officials found that the confiscated materials contained messages that could "advocate or facilitate collective action or affiliation by inmates either generally or with respect to validated Security Threat Groups," "be used to harass, distract, demean, or intimidate staff or others," or that could "impede inmate rehabilitation." (Id.).

Although Plaintiff has the right to free expression, this right must be balanced against prison officials' right to maintain security and prevent violence. See Pell v. Procunier, 417 U.S. 817, 827 (1974) (stating that the judgment of correctional officials in security matters is "peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."). Here, Plaintiff's administrative grievances demonstrate that, particularly given Plaintiff's personal gang affiliation, prison officials had a clear right to prohibit Plaintiff from receiving certain publications in order to maintain security and prevent violence.

Finally, as to the fourth Turner factor—the absence of ready alternatives—aside from allowing the prohibited materials into the prison, there are no readily available alternatives to prohibiting these materials.

In sum, after applying the Turner factors, the Court finds that the prison officials' conduct was reasonably related to legitimate penological interests. Turner, 482 U.S. at 89. Therefore, Plaintiff has failed to state a claim of a violation of his First Amendment rights.

    B.        Eighth Amendment Claim

To state a claim for cruel and unusual punishment due to conditions of confinement that violate the Eighth Amendment, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need—that is, one causing serious physical or emotional injury—and (2) that prison officials were deliberately indifferent to that need. See Farmer v. Brennan, 511 U.S. 825 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, Plaintiff must allege facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. Farmer, 511 U.S. at 834 (citing Wilson, 501 U.S. at 298). Only extreme deprivations will make out an Eighth Amendment claim, and it is Plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, Plaintiff must allege facts sufficient to show that Defendants were deliberately indifferent to the fact that a "substantial risk of serious harm" was posed to Plaintiff's health and safety. Farmer, 511 U.S. at 837. Here, Plaintiff fails to meet the first prong of the test for cruel and unusual punishment. That is, Plaintiff does not allege a serious injury caused by confiscation of the David Lane materials, an increase in his security level classification, or in the requirement that he participate in the STGMU program at Foothills Correctional Institution. Therefore, Plaintiff's Eighth Amendment claim must be denied for failure to state a claim upon which relief

can be granted.

### C. Fourteenth Amendment Due Process Claim

Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. In order to prevail on either a procedural or substantive due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. See Plyler v. Moore, 100 F.3d 365, 374 (4th Cir. 1996). To establish liability under § 1983, a plaintiff must show that "the defendants acted intentionally in depriving him of his protected interest." Id. Although a state may create constitutionally protected liberty interests, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Generally, a prison may place restrictions on inmates' receipt of written materials only when those restrictions are reasonably related to legitimate penological interests. See Turner, 482 U.S. at 89.

As noted above, the claims that Plaintiff has exhausted administratively through his administrative grievances include his claim based on prison officials' confiscation of the David Lane materials, his claim based on his increased security level classification, and his claim based on his required participation in the STGMU program at Foothills Correctional Institution. First, as to Plaintiff's claim related to the confiscation of the David Lane materials, he has not shown that he has a protected liberty interest in having access to the David Lane materials. The North Carolina Department of Public Safety has determined that, in the interest of security at the state prisons, inmates are prohibited from receiving certain materials in the mail, including materials

13

that could advocate or facilitate collective action or affiliation by inmates either generally or with respect to validated Security Threat Groups, materials that could be used to harass, distract, demean, or intimidate staff or others, and materials that could impede inmate rehabilitation. See State of North Carolina Department of Correction Division of Prisons: Policy and Procedures, Chapter D, Section .0109, Publications Received/Possessed by Inmates. The North Carolina Department of Public Safety "has a legitimate interest in rehabilitating inmates, as well as in maintaining security, discipline, and order." Faircloth v. Lee, No. 5:05-CT-21-FL, 2006 WL 4821347, at *6 (E.D.N.C. July 25, 2006). Because Plaintiff does not have a constitutionally protected liberty interest in having unfettered access to all reading materials, particularly those that threaten the security, discipline, and order of North Carolina prisons, he has not stated a claim for a violation of his due process rights.

Next, as to Plaintiff's security classification, the Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. at 484. Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." Olim v. Wakinekona, 461 U.S. 238, 250 (1983). Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. See Olim, 461 U.S. at 245. Similarly, Plaintiff also fails to state a due process claim arising out of his required participation in the STGMU program at Foothills Correctional Institution because Plaintiff has no protected liberty interest in remaining at a particular correctional institution and in determining what programs he wishes to participate in while

14

incarcerated.  See id.

In sum, Plaintiff fails to state a claim for a violation of his Fourteenth Amendment due process rights.

IV.     **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint is dismissed for failure to state a claim under § 1915(e)(2) and § 1915A for failure to state a claim; and

2. The Clerk is instructed to terminate this case.

Signed: May 17, 2013

Robert J. Conrad, Jr.
Chief United States District Judge

15